# THE STATE v. MOSELEY.

1. Betting at the game of billiards, or pool, is not an indictable offence, at least since the passage of the revenue law of March, 1848.

On points referred to this Court from the Criminal Court of Mobile.   Before the Hon. John E. Jones.

THE defendant was indicted for betting at a certain gaming table commonly called pool, which said table was then and there kept, exhibited, and carried on for gaming.

It was proved on the trial, that the game of pool was played at a table, in all respects like a billiard table without pockets, commonly called a pool table.  That the players put in each a certain sum, and that the first one of the players, who by skill or chance, made thirty-one points, neither more or less, entitled himself to the stake, deducting thirty cents therefrom, which went to the exhibitor.   The game was played indiscriminately upon billiard tables with, and without pockets, which are there called pool tables, but sometimes billiard tables.   The testimony showed, that the game of pool is one of the varieties of the game of billiards, played on billiard tables with pockets, called old pool, or without pockets called Spanish pool, with the ordinary billiard tables, and cues.

The defendant moved for numerous charges to the jury, to the effect, that betting at the game, or table, described in the testimony was not an offence under the 12th section of the 6th chapter of the penal code; which charges the court refused to give, and he excepted.   The court referred the decision to the supreme court as novel and difficult.   The court also refused, on motion, to arrest the judgment.

BALDWIN, Attorney General, for the State.
JARNAGIN, for the defendant.

CHILTON, J.—As our attention has been called to the statutes, with a view to ascertain whether a billiard, or pool table, kept for gaming, does not come within the prohibition of the law, we deem it proper to give this case a more extended investigation, than at first we thought necessary.

By the 12th section of the 6th chapter of the penal code, (Clay's Dig. 433,) it is enacted, " If any person shall hereafter be guilty of keeping, or exhibiting any gaming table, called A B C, or E O, or roulette, or rowley powley, or *rouge et noir*, or thimbles, sometimes called three ticket lottery, or chuckerluck, or faro bank, or shall keep and exhibit any other gaming table, or bank of the like kind, or of any other description, under any other name or denomination, or without any name therefor, or shall in any manner be interested or concerned in the keeping, exhibiting or carrying on any such table, bank or game, each and every such person, so offending, and being thereof convicted, shall be punished by imprisonment in the penitentiary for two years." By the 14th section, (Digest, 433,) it is further provided, that if any person shall bet, or be concerned in betting, *at any of the gaming tables, or banks above mentioned or particularly described, or referred to in general terms*, such person shall, on conviction, be fined in a sum not exceeding $100." These are the statutes under which the indictment in this case is framed, and under which it is attempted to be sustained.

It is clear, that if the game called pool, which the bill of exceptions shows is a species of billiards, and played on a billiard table, comes within the 12th section above quoted, then the betting at the game is an indictable offence under the 14th section. By a reference to the statutes passed, as well before, as since the adoption of the penal code, we think it will be manifest the legislature did not intend to embrace billiard, or pool tables, within the prohibition of the statute.

By the act of February 4, 1807, all contracts, &c. the consideration of which shall be for money, *&c.* betted at cards, dice, or any gaming table, commonly called A B C, or E O, *or billiards*, or any other table known or distinguished by any other titles, or by any figures, or rowley powley table, or *rouge et noir*, or any other table of the like kind, &c. are declared void. By the second section of the same act, (Toul-

min's Dig. 375-6,) which punishes betting at certain games and tables therein specified, and in the language of the preceding section, *billiard tables are omitted*, whereas all the other tables mentioned in the first are described, in the same order, in the second section of the act. By the third section, however, of the same statute, the keepers or exhibitors of billiard tables, as well as of the other tables named, are regarded, and rated as vagrants, and *it was* made lawful for justices of the peace to cause, by their warrant, such tables to be publicly burned or destroyed.

By the first section of the act of December, 1811, amendatory of the act last cited, (Toul. Dig. 378, § 1,) it is provided "that hereafter, any person or persons, wishing to set up and use a billiard table within this territory, may do the same upon paying to the county treasurer of the proper county, the sum of $100, whereupon such treasurer shall grant to such applicant a license to set up a billiard table, in any named house, and the table so licensed, shall be exempt from all the penalties imposed by law, for one year from the date of such license," &c.

The act of December, 1812, (Toul. Dig. 379, 380,) entitled "an act to amend and reduce to one, the several acts to prevent the evil practice of gaming," provided, that a party who kept, or exhibited, an unlicensed billiard table for play, should be liable to the same punishment which it denounced against the exhibitors of the other gaming tables specified therein, but changed the mode of granting license, from the treasurer to the clerk of the county court. By the revenue law of 1822, licensed billiard tables were taxed $1,000 each, and those unlicensed double that sum. By a subsequent statute, the keeper was required to pay $2,000 for license, &c., the penalty for keeping an unlicensed billiard table for play, was $4,000, one half to the informer, and the other half to the State. Aik. Dig. 411. By the 19th section of the 6th chapter of the penal code, (Clay's Dig. 434,) the keeping of a billiard table, in connection with a house where spiritous liquors are retailed as an appendage thereto, is made indictable, and the party convicted is subject to be fined not less than $200, nor more than $500. By the 98th section of the revenue law, pamphlet acts of '47-8, p. 32, the clerk of the

county court is authorized to issue a license to any person, for one year, to keep a billiard table, or pool table, upon such person paying $50 therefor, and the indictment before us was found after the passage of this last named act.

We have thus referred to the various enactments upon the subject of billiard tables, that it may be seen the conclusion to which we have attained, that the legislature did not intend to punish the exhibition of such tables as a felony, is fully sustained by the general tenor of legislation for the last thirty years. It may be asked, if the legislature deemed the exhibition of such tables to come within the mischief of the statutes against "the evil practice of gaming," why were such tables not embraced by name in the 12th section of the penal code, and the previous enactment of which it is a transcript, differing only as to the punishment affixed? Why were billiard tables named in the first section of the act declaring gaming contracts void, and omitted, *ex industria*, in the second section? These queries can alone be satisfactorily answered upon the hypothesis, that the legislature did not intend to class the exhibitors or keepers of such tables, with the keepers of gaming tables or banks called A B C, E O, roulette, faro, and the like. In The State v. Fellyaw, 3 Ala. Rep. 735, it was held, that an indictment for setting up and using a billiard table for play, without license, could not be sustained. That the legislature intended to punish the keepers of such tables if they permitted betting to be carried on upon them, by two years' imprisonment in the penitentiary, and at the same time to license the use of such tables, seems to involve an absurdity. Further, the distinction that such tables are licensed "for *play*," and not for gaming, is a refinement which we think the framers of the statute did not intend. If the exhibition of such tables for gaming is regarded a felony under our statute, and so injurious to the public morals as to require the confinement of the keeper two years in the State prison, we can hardly imagine that their exhibition "for play," as the counsel for the State would interpret this term, would have been legalized. On the contrary, the keeping or exhibiting of such tables for any purpose, would doubtless have been prohibited. The evident meaning of

50

the statute, in licensing billiard tables *for play*, was to distinguish tables which were used or played upon, from those which were not used, or were kept for sale. The act of 1812, which placed unlicensed billiard tables "*for play*" in the same category with other gaming tables, and punished the exhibitors or keepers in the same way, clearly shows the legislative construction of the terms. By the 6th section of the same act, (Toul. Dig. 380-1,) the table may be licensed, and then the keeper or exhibitor *is exempt from all the pains and penalties* imposed by law.

We should not have said thus much upon a point so perfectly plain, had it not been pressed upon our consideration with much apparent confidence. We should long hesitate before we could give a statute such construction, as would place the legislature in the singular position, of holding out to the citizens such temptation to the commission of felonies, as the licensing a billiard, or pool table, the betting upon which by third persons, would render the exhibitor a felon. With the policy of the statute we have nothing to do. It is our business to expound, not to make the law—and as the legislature have not thought proper to make betting at billiards, pool, horse racing and the like indictable, we have no discretion, but are bound to declare the law, let the consequences be what they may. If such games or pastimes become *public nuisances*, we apprehend the common law furnishes a remedy, fully adequate to their abatement. Any other construction than that we have placed upon the statute, would render it unmeaning and absurd.

We might also add, that a game or table so well known as to have been the subject of taxation for near forty years, if intended to have been changed into a felony, would have been named in the statute, and not left to doubtful implication. Besides, the act of 1848, above referred to, does not license them to be kept for play, but generally. Pamp. Acts, 47-8, § 32. As, then, betting is only indictable when it is upon some table, game or bank, prohibited by the 12th section of the 6th article of the penal code, and we have seen

that the games of billiards and pool are not embraced, it follows that no conviction could properly be had under this indictment. The court below having decided the law otherwise, its judgment is reversed, and the cause remanded, that the defendant may be discharged.