George Harris *v*. The State.

Gaming-Tables. — The keeping or exhibiting, though for the purpose of gaming, of a table or game which is taxed and licensed under the revenue laws of this State, is not in violation of the provisions of the Penal Code which make it penal to unlawfully keep or exhibit any gaming-table or device. See the opinion *in extenso* for a discussion of authorities and considerations bearing upon this question.

Appeal from the County Court of Wood. Tried below before the Hon. W. J. Jones, County Judge.

The case is disclosed in the opinion. A fine of $25 was assessed against the appellant in the court below.

*L. Z. Wright*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

Winkler, J. The charge in the indictment, aside from date and venue, is that the defendant, on December 2, 1879, in Wood County, "did then and there unlawfully keep and exhibit, and was interested in keeping and exhibiting, for the purpose of gaming, a certain gaming-table, contrary to law," etc. On the trial the defendant offered testimony tending to show that he had paid the tax imposed by law for keeping and exhibiting the table in question, and it is shown by the statement of facts that the State here "admitted that defendant had the tax-collector's license, as prescribed by law, for keeping said table as a Virginius table."

On the trial below, counsel for the defendant requested and the court refused a charge to the jury as follows : " You are instructed that the keeping or exhibiting of a table or game licensed and permitted by law does not come under the penalty attached to the keeping or exhibiting of a gaming-table for the purpose of gaming." The principle announced in the refused charge is apparent, and presents the only material question in the case. There can be no question that the kind of table described in the evidence would be embraced within the prohibitions of art. 358 of the Penal Code, as illustrated by subsequent articles. But these articles must be construed with reference to art. 4665 of the Revised Statutes, which provides, among other things, for the levy and collection of an occupation-tax : " For every billiard, bagatelle, pigeon-hole, devil-among-the-tailors, or jenny lind table, or anything of the kind used for profit, fifty dollars."

The question, stripped of its verbiage, is this : Does the law warrant a conviction for pursuing an occupation which is taxed or licensed by law?

Authorities to which our attention has been called shed but a glimmering light on the precise question here presented. The assistant attorney-general has invited our attention to *Houghton* v. *The State, Johnson* v. *The State,* and *Longworth* v. *The State,* respectively at pp. 136, 504, and 508, 41 Texas, in opposition to the position contended for by the appellant's counsel. In Houghton's case the charge was " unlawfully keeping and exhibiting a certain gaming device called ten-pins, on which money was then and there bet." It seems to have been proved that the defendant had admitted that he had been engaged for eleven months just prior to the finding of the indictment in keeping a ten-pin alley, and during that time money had been bet on the regular game of ten-pins played on said alley ; that the alley was kept open to the public, and those who desired to do so were permitted to bet on the same. The defendant

proved that the license-tax assessed by law had been paid upon said alley during the time it was kept by him. There seems not to have been any charge set out in the record. The court say: "Upon this evidence the jury returned a verdict against the appellant, and the court overruled his motion for a new trial; in which we are clearly of opinion there was error." The court said, however, that what was said applied to the law in force at the time the indictment was found, and had no reference to indictments under the law in force when the case was decided. But it was also said in that case: "It is not the keeping or exhibiting of a table or game licensed or permitted by law which comes under the penalty attached to the keeping of a gaming-table kept or exhibited for the purpose of gaming, although wagers may be laid upon the games played upon such licensed table." If the error upon which the judgment was reversed was not on the ground that the defendant had proved the payment of the license-tax assessed by law on the alley, then we confess we do not understand the opinion of the court.

Johnson's case seems to be in reference to the indictment, and seems not to bear upon the question under consideration. In Longworth's case the indictment showed that the game was on "a table resembling a billiard-table." The court held the words "resembling a billiard-table," stripped of surplusage, as being tantamount to "a billiard-table." The court said: "The amendment of the two articles of the Code (412 and 418) by act of the Thirteenth Legislature does not in any way affect or annul the exception made in favor of a billiard-table, or a table resembling a billiard-table, upon which alone is played the licensed game of billiards." What we understand as being here decided is that the amendments to the Code made by the Thirteenth Legislature had no effect upon the licensed game of billiards, and virtually that, the game of billiards being a licensed game, the law permitted it. It was said in that

case that " the main object of the amendment referred to seems to be, not to change the law of gaming as it stood previously, but to render certain what had become to be thought uncertain, arising out of the tax laws in reference to jenny lind and other tables therein mentioned, and especially to put them on a footing with other prohibited gaming-tables; or, in other words, to prohibit their being kept for the purpose of gaming at all." To our minds, the learned judge who delivered the opinion never intended to decide that these amendments only embraced the licensed game of billiards, or to hold that the other games would still be indictable, though licensed. That this is so, we think, is clearly evinced by the following language: " How far this expressed intention as to jenny lind and other tables mentioned in said amendment (of art. 412 in act of 1873, p. 36) may be controlled by the subsequent act of the same session of the Legislature imposing an occupation-tax on such tables the same as on a billiard-table, need not now be considered, as the facts of this case do not raise any such question."

To our minds, these several cases contain no expression which by any legitimate interpretation of language can be construed into an intimation that the State can punish criminally the playing of a game upon a licensed table. On the contrary, the language employed, whether necessary to a decision of the questions presented or not, seems to us to imply directly the reverse.

Taking up the decisions where the question seems to have been left by our Supreme Court, this court, in the case of *Chiles* v. *The State*, 1 Texas Ct. App. 27, had occasion to examine previous decisions, and to make an application of the effect of the laws of 1873 upon the subject of taxation, upon which the Supreme Court had expressly declined to express any opinion. It will be found on inspection that the amendment of the Penal Code was passed on April 9, 1873, whilst the act imposing a tax was not passed until June 3,

1873. In *Chiles* v. *The State* the two acts were considered to be incompatible, and not susceptible of being so construed that both might stand, and that the latter act must stand as the last expression of the legislative will; and in that case we said: " It is not to be supposed that the Legislature intended to punish criminally any of the acts from which its revenue is in part derived."

We are strengthened in our view of the law by the opinion of the court in *The State* v. *Mosley*, 14 Ala. 390, where a question arose somewhat analogous to the one we are now considering, and under statutes having a resemblance at least to our statutes, though imposing graver penalties than ours for similar offences.   Chilton, J., delivering the opinion of the court, said: " That the Legislature intended to punish the keeping of such tables, if they permitted betting to be carried on upon them, by two years' confinement in the penitentiary, and at the same time to license the use of such tables, seems to involve an absurdity."   Further, the distinction that such tables are licensed " for play," and not for gaming, is a refinement which, we think, the framers of the statute did not intend.   We notice that in the Alabama statutes the language employed is: " The table may be licensed, and then the keeper or exhibitor *is exempt from all the pains and penalties imposed by law*."   The words which exempt from punishment the exhibitor of a licensed table are not employed in our statute; still, we think the effect of the licence is the same, with or without those words. By an examination of our statutes, whether considered as set out in the recent revision or by reference to the original enactments, it appears that the law which imposes the tax is in date of operation subsequent to the amendment of the Code enacted in 1873.   Our opinion, therefore, is that the Legislature, by imposing a tax of $50 upon billiard, bagatelle, pigeon-hole, devil-among-the-tailors, or jenny lind tables, or anything of the kind used for profit, deprived the Penal Code of its operation against those who keep or exhibit or bet upon those tables.

The table described in the testimony is within the provisions of the law, and *of the kind* of tables mentioned by name, and the Legislature must have deliberately intended, by imposing the tax, to relieve against the penalties imposed for pursuing the taxed or licensed occupation; and therefore the court, in refusing to give to the jury the special instruction asked by the defendant's counsel, erred to the defendant's prejudice.

It is a general rule in misdemeanor cases not to revise the rulings upon the charge of the court unless the ruling is saved by bill of exceptions; but this general rule is not without its exceptions: as when a fundamental error has been committed through misdirection of the jury. *Veal* v. *The State,* 8 Texas Ct. App. 474, and ·authorities there cited. The error here committed comes within the rule laid down in Veal's case. For the error above pointed out, the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*